UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JOSE MANZO-FLORES, | ) | |
| Institutional ID No. 14161-085, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:13-CV-114-BG |
| KERRY DIXON, Senior Warden, *et al.*, | ) | ECF |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Jose Manzo-Flores filed this civil rights action *in forma pauperis* on May 3, 2013, seeking damages for his claim that prison officials at Giles W. Dalby Correctional Facility (Dalby Facility) failed to provide him adequate medical care. Manzo-Flores seeks declaratory and injunctive relief. The United States District Court reassigned the case to the undersigned United States Magistrate Judge on May 6, 2014.

**I.  Discussion**

  A.  Dismissal for Want of Prosecution

The court must screen a complaint brought *in forma pauperis* and dismiss it if the allegation of poverty is untrue or the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2014).

On July 31, 2014, the undersigned entered an order to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). The order required Manzo-Flores to complete

the questionnaire within thirty days from the date of the order. (ECF No. 9.) Manzo-Flores did not return the questionnaire. In an attempt to obtain a response to the questionnaire, the undersigned entered a second order to complete a questionnaire on September 12, 2014, which required Manzo-Flores to complete the questionnaire within twenty days of the date of the order and admonished him that failure to complete the questionnaire would likely result in dismissal of his Complaint. (ECF No. 10.) As of the date of this report and recommendation, Manzo-Flores has not provided responses to the questionnaire as required in the initial order entered on July 31, 2014, or the subsequent order entered on September 12, 2014.

A district court has inherent authority under Rule 41(b) of the Federal Rules of Civil Procedure to *sua sponte* dismiss an action for want of prosecution. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–33 (1962); *Clofer v. Perego*, 106 F.3d 678, 679 (5th Cir. 1997). It is, therefore, recommended that the United States District Court dismiss Manzo-Flores's Complaint for want of prosecution.

    B.    Dismissal Pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A

In the alternative, the undersigned has reviewed the authenticated records provided by the Dalby Facility with respect to Manzo-Flores's claims and recommends that the case be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). A complaint lacking an arguable basis in fact rests upon clearly baseless factual contentions, while a complaint lacking an arguable basis in law rests upon indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). In reaching a determination regarding the

viability of the complaint, the court may consider reliable evidence such as the plaintiff's allegations and authenticated records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991).

Under the Eighth Amendment, prison officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). To allege a constitutional violation, an inmate must show that the prison official acted with deliberate indifference toward his serious medical needs, resulting in an unnecessary and wanton infliction of pain. *Id*. "Deliberate indifference is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)) (internal quotation marks omitted).

To establish deliberate indifference, a prisoner must show more than mere negligence on the part of the defendants. *See id.* at 347 ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."). "A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006). A mere disagreement with the course of medical treatment, however, does not state a claim for deliberate indifference. *See Gobert*, 463 F.3d at 346–47; *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999).

In this case, Manzo-Flores has failed to show that the Defendants refused to treat him, ignored his complaints, or otherwise treated him improperly. Manzo-Flores claims that the Dalby

Facility Medical Department failed to follow proper procedures when examining him for a hernia, which has caused him significant harm. Specifically, he alleges that the Dalby Facility Medical Department refused to refer him to a specialist for examination and treatment of a hernia. Instead, they have only prescribed Manzo-Flores a "pill," which he alleges is causing problems related to his liver.

Manzo-Flores may disagree with the course of treatment that the Dalby Facility Medical Department is undertaking for his hernia; however, the authenticated records show that Manzo-Flores has been evaluated by medical staff on numerous occasions for complaints of abdominal pain and pain related to his hernia. The authenticated medical records list the hernia as a "ventral reducible hernia"—a hernia that develops near a previous surgery site that may be flattened and is not an immediate danger to a person's health.

On June 22, 2012, Manzo-Flores was transferred to the Dalby Facility and, although he reported having abdominal surgery eight months prior, he did not complain of pain related to his hernia at intake. He was granted medical restrictions, including a lower bunk, prohibition from using ladders, and an exemption from food service work. On September 13, 2012, Manzo-Flores was examined by Dr. Sands at the Dalby Facility after he complained of his hernia. Dr. Sands did not believe hernia surgery was required but prescribed an abdominal binder for Manzo-Flores to wear for his hernia. After complaining that the pain reliever mobic was hurting his stomach, Manzo-Flores was prescribed naproxen instead. In June and August of 2013, Manzo-Flores was again evaluated for his hernia. This time, Dr. Hanford evaluated Manzo-Flores's condition and noted that he was ambulating well and recommended that he continue wearing the abdominal binder.

In September and October 2013, Manzo-Flores complained of his hernia and was again evaluated by the Dalby Facility medical staff. At the September visit, he reported running sixteen laps per day. At both visits, it was recommended that he continue wearing the abdominal binder. On January 9, 2014, Dr. Hanford evaluated Manzo-Flores's hernia and noted that no surgery was required at that time. Again on April 9, 2014, Dr. Hanford examined Manzo-Flores's hernia, noting that the hernia was approximately 12x17 centimeters in size, and recommended that Manzo-Flores continue wearing the abdominal binder, lose weight, and avoid lifting weight greater than fifteen pounds. In connection with the other treatment provided for his hernia, Manzo-Flores was issued medical passes to use his abdominal belt in his cell, as well as a pass for an extra mattress.

In his Complaint and throughout his medical records, Manzo-Flores has requested surgical repair for his hernia. However, Dr. Hanford and Dr. Sands have both determined that surgery is not required at this time. A healthcare provider's decision as to the appropriate course of treatment "is a classic example of a matter of medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Although Manzo-Flores may disagree with the Dalby Facility medical staff's diagnoses and method of treatment, mere disagreement does not constitute deliberate indifference. *See Gobert*, 463 F.3d at 346.

Based on the collective medical records as discussed above, the evidence does not show that any of the Defendants were deliberately indifferent to Manzo-Flores's serious medical needs. Medical records of sick calls and other examinations or diagnoses "may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Indeed, the authenticated medical records show that Manzo-Flores's complaints of hernia pain were evaluated on numerous occasions, he has been prescribed an abdominal belt for his hernia and naproxen to

5

alleviate his pain, and he has been granted medical passes for the abdominal belt and an extra mattress in his cell. In sum, Manzo-Flores has not shown that the Defendants refused to treat him or ignored his complaints in wanton disregard for his serious medical needs. *See Gobert*, 463 F.3d at 346.

In his Complaint, Manzo-Flores names Warden Dixon as a Defendant. He alleges that Warden Dixon "is legally responsible for the operation" of the Dalby Facility and for the welfare of the inmates, and Warden Dixon has failed to ensure adequate medical care for Manzo-Flores which has caused him "damage irreparable." Manzo-Flores did not allege facts either in his Complaint or in the grievances attached to his Complaint to establish that he had personal contact with Warden Dixon. Rather, he appears to sue Warden Dixon solely based on his supervisory role. Manzo-Flores specifically states that he is suing Warden Dixon in his individual capacity.

Reading his Complaint liberally, Manzo-Flores's claim against Warden Dixon is based on supervisory liability. Liability of government officials for the unconstitutional conduct of their subordinates may not rest solely upon a theory of *respondent superior* or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citing *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888)); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) ("[S]upervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."). A supervisory official may be held liable only if: (1) he personally participated in acts that violated the plaintiff's constitutional rights; (2) a sufficient causal connection exists between his wrongful conduct and the constitutional violation; or (3) he implemented an unconstitutional policy that directly resulted in injury to the plaintiff. *See Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987). In addition,

6

a supervisory official may be liable if the supervisor either failed to supervise or train the subordinate official. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

As discussed above, Manzo-Flores has failed to establish a claim for deliberate indifference to serious medical needs. Without a constitutional violation, he is unable to state a claim against Warden Dixon based on supervisory liability, in his individual capacity or otherwise. *See Thompkins*, 828 F.2d at 303–04; *Porter*, 659 F.3d at 446. Moreover, Manzo-Flores did not allege that Warden Dixon was personally involved in any deprivation of his rights, nor did he allege that Warden Dixon implemented an unconstitutional policy or that the Dalby Facility medical staff acted pursuant to any such policy. Thus, even if there had been a violation of his constitutional rights—which the undersigned has already concluded there has not been—Manzo-Flores has failed to establish a claim against Warden Dixon. Accordingly, Manzo-Flores's claim against Warden Dixon in his individual capacity—and in his official capacity, to the extent Manzo-Flores sues him in such capacity—must therefore be dismissed. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

In sum, Manzo-Flores has not established that the Defendants acted with deliberate indifference to his serious medical needs that would warrant injunctive or any other form of relief.

**II.     Recommendation**

For the foregoing reasons, the undersigned recommends that the United States District Court dismiss Manzo-Flores's Complaint and all claims therein with prejudice pursuant Rule 41(b) of the Federal Rules of Civil Procedure for want of prosecution and alternatively, pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A.

### III. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:   January 13, 2015.

_____
NANCY M. KOENIG
United States Magistrate Judge